**O**

**NO JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO PRYOR, TRENA STEWARD; KARLA RAY,<br><br>        Plaintiffs,<br><br>  v.<br><br>WYCLE JEAN; SONY MUSIC ENTERTAINMENT, INC.; SONY CORPORATION OF AMERICA, INC.; SONY MUSIC ENTERTAINMENT (JAPAN), INC., et al.,<br><br>        Defendants. | Case No. CV 13-02867 DDP (AJWx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>[Dkt. No. 36] |

Presently before the court is Defendants' Motion to Dismiss Third Amended Complaint ("TAC"). (Dkt. No. 36). Having considered the submissions of the parties and heard oral argument, the court GRANTS the Motion and adopts the following order.

**I.  Background**

As described in this court's earlier order, in 1974, David Pryor ("Pryor") wrote a musical composition to a song called "Bumpin' Bus Stop." (TAC ¶ 9.) That same year, Pryor produced and, along with his band, "The Play Boys," recorded "Bumpin' Bus

Stop" at Gold Future Recording Studio.  (TAC ¶ 10.)  Pryor made copies of the recording (hereinafter, "the Gold Future record") and sent them to radio stations and distributors.  (Id. ¶¶ 10-11)  Pryor did not register a copyright in the Gold Future record.

In 1975, Pryor desired to promote and distribute the Gold Future record on a wider scale.  (TAC ¶ 12.)  Private Stock Records ("Private Stock") expressed an interest in "Bumpin' Bus Stop."  (Id.)  With Pryor's consent, Private Stock re-mastered the Gold Future record, shortened the length of the Gold Future Record, changed the name of Pryor's band to "Thunder and Lightning," and placed its own label on a re-mastered recording of "Bumpin' Bus Stop."[1]  (Id.)  Private Stock obtained copyright registrations for the Private Stock record and the musical composition embodied therein.  (Id. ¶ 15.)

In early 2004, Pryor was admitted to a skilled nursing facility with numerous ailments, including senile dementia, and a conservator was appointed.  (TAC ¶ 19.)  Pryor died in May 2006.  (Id.)  Plaintiffs here are Pryor's heirs (Id. ¶¶ 4-6, 9, 21.)

In July 2006, Private Stock's successor in interest, Douglas Uttal ("Uttal") granted Defendant Zomba Recording LLC ("Zomba") a limited license to sample a portion of the Private Stock record for use in a single and/or film soundtrack entitled "Step Up."  (TAC ¶ 27.)  Uttal explicitly refused to warrant that he actually had any ownership rights in "Bumpin' Bus Stop."  (Id.)  In August 2006, Defendants Zomba, Sony Music Entertainment Inc., and Jean

---

[1] Despite these changes, the TAC alleges that the Private Stock version (the "Private Stock record") is a literal copy of the Gold Future record.  (TAC ¶ 13.)

2

1  "produced, copied, distributed, and/or released" a musical
2  recording and music video for "Step Up," which sampled "Bumpin' Bus
3  Stop." (TAC ¶ 34.)  The "Step Up" song was featured in a film of
4  the same name, which Defendants Disney, Buena Vista, and Summit
5  Entertainment "created, produced, copied, distributed, and/or
6  released" around the same time.  (Id.)
7      In October 2012, Private Stock assigned all of its rights in
8  "Bumpin' Bus Stop" to Plaintiffs.  (TAC ¶ 25.)
9      In April 2013, Plaintiffs filed this infringement action
10 against fourteen different defendants.  In addition to the
11 allegations related to "Step Up," the SAC alleges that several
12 other combinations of Defendants infringed upon Plaintiffs'
13 copyright in "Bumpin' Bus Stop" in a variety of ways, such as
14 sampling it in other songs unrelated to "Step Up" and using songs
15 containing unauthorized samples in other movies and television
16 shows unrelated to "Step Up."
17     On October 25, 2013, this court granted Defendants' Motion to
18 Dismiss the Second Amended Complaint, with leave to amend, because,
19 though Plaintiffs alleged infringement of the Gold Future Record,
20 neither Plaintiffs nor Pryor ever registered a copyright in the
21 Gold Future record.  Plaintiffs filed the TAC on November 12, 2013.
22     The TAC alleges that Plaintiffs filed proper copyright
23 registration forms for the Gold Future record and underlying
24 musical composition in April 2012.  (TAC ¶ 24.)  Plaintiffs now
25 acknowledge that this allegation is not true.  (Opposition to
26 Motion at 3.)  Plaintiffs did not submit a proper copyright
27 application until December 23, 2013, after the filing of the
28 instant Motion.  (Reply at 3; Plaintiffs' Request for Judicial

Notice, Ex. 1.)  A certificate of registration for the Gold Future record has now issued, effective as of that date. (Plaintiffs' RJN, Ex. 1.)  Though Plaintiffs' TAC and Reply refer to copyrights in both the Gold Future Record and the underlying musical composition, the substantive allegations at issue here refer only to a copyright in the Gold Future record, and not the "Bumpin' Bus Stop" musical composition.  Similarly, the only certificate of registration provided to the court pertains to a sound recording. (Plaintiffs' RJN, Ex. 1).

Defendants now move to dismiss the TAC's First and Second claims for relief, which pertain solely to the Gold Future record copyright.

**II.  Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked

4

assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.   Registration of the Gold Future Copyright

At the outset, the court notes that as early as October 2012, well before the filing of this action, let alone the TAC, the Copyright Office informed Plaintiff Steward that her copyright application was deficient. (Defendants' Supplemental RJN, Ex. 6.) Plaintiffs' counsel was apprised no later than September 17, 2013 that Plaintiffs' application remained deficient. (Id., Ex. 7.) Plaintiffs and their counsel therefore knew at the time the TAC was filed that the TAC's allegations regarding Plaintiffs' copyright application were false. To the extent Plaintiffs' counsel reiterated those allegations during the court-mandated conference of counsel pursuant to Local Rule 7-3 in connection with this Motion, those representations, too, were false. Indeed, Plaintiffs did not cure the deficiencies in their application until after that conference of counsel, and after Defendants highlighted some of the

5

application's likely shortcomings in the instant Motion.  (Id.) While the pleading deficiencies resulting from this questionable conduct could themselves justify dismissal of the TAC, 17 U.S.C. § 411(a), the court concludes that, Plaintiffs having since perfected their registration, efficiency is best served by proceeding to the merits without requiring Plaintiffs to first re-allege registration in accordance with 17 U.S.C. § 411(a).

B.   Infringement of the Gold Future record

As an initial matter, Plaintiffs' TAC and Opposition to the instant Motion somewhat confusingly conflate the Private Stock record and the Gold Future record.  Furthermore, the TAC is internally inconsistent.  While Plaintiffs allege that the Private Stock record "literally copies" the Gold Future record, the TAC also acknowledges that the separately copyrighted Private Stock record is a "re-master" of the Gold Future record, with a truncated playing length and other "minor technical adjustments."  (TAC ¶¶ 12-13.)  The existence of two separate sound recordings (the Gold Future record and the Private Stock remaster) is important, as the substantive allegations at issue here refer only to copyright to the Gold Future record, and not to the "Bumpin' Bus Stop" musical composition featured in both the Gold Future record and the Private Stock record.

A "sound recording copyright does not attach to the underlying [musical] work *per se*, but only to the aural version of such work as fixed on [a] material object."  1-2 Nimmer on Copyright § 2.10[A][2].  "Copyright in a sound recording does not give the same scope of exclusive rights as for other types of copyrighted works."

6

1 | <u>Griffin v. J-Records</u>, 398 F. Supp. 2d 1137, 1142 (E.D. Wash 2005);
2 | 17 U.S.C. § 114(a).  As 17 U.S.C. § 114(b) states:

> The exclusive right of the owner of copyright in a sound recording under clause (1) of section 106 is limited to the right to duplicate the sound recording in the form of phonorecords or copies that directly or indirectly recapture the <u>actual sounds fixed</u> in the recording. The exclusive right of the owner of copyright in a sound recording under clause (2) of section 106 is limited to the right to prepare a derivative work in which the <u>actual sounds</u> fixed in the sound recording are rearranged, remixed, or otherwise altered in sequence or quality. The exclusive rights of the owner of copyright in a sound recording under clauses (1) and (2) of section 106 do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording.

17 U.S.C. § 114(b) (emphases added).  "Thus, the remedy of the owner of a sound recording copyright is largely limited to proceeding against the tape or record 'pirate' who without permission makes a reproduction of the actual sounds in a protected recording."  <u>Griffin</u>, 398 F. Supp. 2d at 1142.

Defendants concede that the separately-copyrighted Private Stock record is a derivative work.  (Reply at 4.)  Plaintiffs do not appear to contest the validity of the Private Stock record copyright registration.  As a leading treatise explains:

> In some cases, the editing of a previously recorded work may in itself involve such originality as to command copyright, as where it involves such acts as equalizing, changing the highs and lows, providing more bass and treble, adding echo, or abridging by making discretionary and not obvious internal cuts. . . .
>
> [I]t is difficult to envisage a situation that will not involve at least the recorder's minimal originality in selecting the particular sound to be recorded, at a particular point in time, with a particular sound volume, and physical distance and angle between microphone and subject.

Nimmer, § 2.10[A][2][b] (internal quotations omitted). Of course, "copyright in a derivative work does not extend to any part of the work in which pre-existing material has been used unlawfully." Nimmer, § 2.10[A]. Plaintiffs do not, however, argue that Private Stock's re-mastering was in any way unlawful. Indeed, the TAC itself alleges that Pryor and Private Stock agreed that Private Stock would re-master the Gold Future record and distribute copies of the newly-engineered Private Stock record. (TAC ¶ 12.)

Instead, Plaintiffs appear to argue that Zomba infringed the Gold Future sound recording copyright by sampling a portion of the Private Stock record "and, in turn, the Gold Future [r]ecord," presumably because of the Private Stock record's "literal copying" of the Gold Future record. (Opposition at 17 (emphasis added).) In other words, Plaintiffs suggest that because the Private Stock record is a derivative work, and because Private Stock had no right to license the Gold Future record, Defendants' use of the Private Stock record constitutes infringement of the original Gold Future record. (Opp. at 15-17.)

Defendants argue that issues regarding derivative works and licenses are irrelevant because, as a matter of law, copyright in a sound recording extends only to the actual sounds fixed in a recording. Thus, Defendants contend, it does not matter whether Private Stock could or did license the Gold Future record to Defendants because Defendants never sampled anything from the Gold Future record.[2] The court agrees. Under 17 U.S.C. § 114(b),

---

[2] To the extent Defendants suggest that Pryor's actions with respect to Private Stock necessarily demonstrate an intent to grant Private Stock an implied license "to take any action consistent
(continued...)

Plaintiffs have the exclusive right to duplicate, rearrange, or re-mix the "actual sounds" of the Gold Future record. Defendants did not do anything with those "actual sounds." Rather, Defendants used licensed "actual sounds" from the Private Stock record. Because the TAC's First and Second claims for relief are premised solely upon infringement of the Gold Future sound recording copyright, those claims are DISMISSED, with prejudice.[3]

**IV. Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. The First and Second claims for relief are DISMISSED, with prejudice.

IT IS SO ORDERED.

Dated: October 8, 2014

DEAN D. PREGERSON
United States District Judge

---

[2](...continued) with copyright ownership," the court disagrees. The scope of any such license, however, is not relevant, for the reasons discussed above.

[3] Defendants' Motion and oral argument made passing references to Plaintiffs' Third, Fourth, Fifth, and Sixth Causes of Action. Those references appear to have been based on Plaintiffs' failure to register a copyright in the Gold Future record. As discussed above, Plaintiffs have since remedied that deficiency.

9